UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD LEE JOHNSEN,

                Plaintiff,

    v.

HENRY TAMBE,

                Defendant.

Case No. C19-141-MLP-TSZ

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Richard Lee Johnsen is a former pretrial detainee at the Skagit County Community Justice Center ("SCCJC") in Mt. Vernon, Washington. He is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 action alleging that Defendant Henry Tambe, Health Services Administrator ("HSA") at SCCJC, was deliberately indifferent to his serious medical needs related to chronic pancreatitis. (Dkt. # 8 ("Am. Comp.") at 7.)

Defendant moves for summary judgment dismissal of Plaintiff Richard Lee Johnsen's claims. (Dkt. # 33 ("Mot.").) To date, Plaintiff has failed to file an opposition to Defendant's dispositive motion. If a summary judgment motion is unopposed, Federal Rule of Civil

Procedure 56 "authorizes the court to consider a fact as undisputed," but does not permit the Court to grant summary judgment by default.

Accordingly, the Court has considered Defendant's motion for summary judgment on the merits, and considers the facts set forth in Defendant's declaration supporting his motion to be undisputed. Having considered Defendant's motion, Plaintiff's lack of opposition, the governing law, and the balance of the record, the Court recommends that Defendant's motion for summary judgment (dkt. # 33) be GRANTED and Plaintiff's claims be DISMISSED with prejudice.

## II.   BACKGROUND

As noted above, Plaintiff did not file any opposition to Defendant's motion for summary judgment, and therefore has not filed any declarations in this case.[1] However, Plaintiff set forth his version of the facts in his verified amended complaint. (See generally Am. Compl.) To the extent Plaintiff's version or timeline of events differs from Defendant Tambe's account or Plaintiff's medical records, the Court has identified the discrepancy below.

Although Plaintiff's amended complaint frames his challenge to the medical care he received at SCCJC as an Eighth Amendment violation, it appears that Plaintiff was a pretrial detainee throughout his incarceration. (Mot. at 6 (citing state court filings showing Plaintiff's most recent criminal trial has not yet been completed).) Plaintiff was booked into SCCJC on October 31, 2017. (Am. Compl. at 4.) He alleges that during the booking process, he answered all questions regarding his medications and treatment for his "acute chronic pancreatitis disease (with a tumor growing on it)." (*Id.*) Plaintiff alleges that he was reassured by jail staff that his

---

[1] In fact, mail addressed to Plaintiff at the jail was returned as undeliverable on July 9, 2019, and Plaintiff has failed to provide an updated mailing address. (Dkt. # 38.) It does appear, however, that Plaintiff received a copy of Defendant's summary judgment motion and *Rand* notice before he was released from custody.

REPORT AND RECOMMENDATION - 2

1 gastroenterologist at Virginia Mason Medical Center in Seattle, Dr. Shayan Irani, would be

2 contacted for orders and information about how to care for his condition. (*Id*.)

3   Despite these assurances, Plaintiff asserts that it took several days before he began to

4 receive his medications, and was approved for a special diet that satisfied his medical needs.

5 (Am. Compl. at 4.) Plaintiff asserts Defendant Henry Tambe, HSA, who is responsible for the

6 overall operation of medical services and inmate care at the facility, was responsible for ordering

7 him this special diet. (*Id*. at 3-4.) Plaintiff alleges that his medically ordered diet tray continued

8 to contain foods that he is not allowed to have nearly every day, and the problem was not

9 resolved by his grievances. (*Id*. at 4.)

10   Defendant Tambe is a registered nurse employed by NaphCare, Inc., a contractor for

11 Skagit County, since February 26, 2018. (Dkt. # 34 ("Tambe Decl.") at ¶¶ 2, 7.) His duties as

12 HSA involve primarily administrative tasks, responding to grievances, and supervising providers

13 and nursing staffing at SCCJC. (*Id*. at ¶¶ 4, 7.) His duties do not involve providing routine or

14 direct care or treatment to inmates, ordering prescription medications, diagnosing or developing

15 treatment plans for complicated medical conditions, or ordering off-site referrals to medical

16 providers for inmates. (*Id*. at ¶ 5.)

17   Plaintiff claims that in December 17, 2017, he was transported to the Skagit Valley

18 Hospital for symptoms of jaundice due to complications stemming from his pancreatic tumor

19 growth. (Tambe Dec. at ¶ 5.) Plaintiff claims that after a temporary plastic stent was installed to

20 stabilize his condition, he was returned to the jail. (*Id.*) Defendant similarly asserts that Plaintiff

21 received a stent following diagnosis of a biliary obstruction in the head of his pancreas on

22 December 17, 2017. (Tambe Decl. at ¶ 10; *id*., Ex. 2 (discharge summary).) Plaintiff claims that

23 upon his discharge back to the jail on December 21, 2017, he was informed that Defendant

REPORT AND RECOMMENDATION - 3

Tambe was now in charge of his medical care. (Am. Compl. at 5.) Plaintiff's next scheduled appointment with Dr. Irani had been canceled, and he was informed that "another appointment would be made [with] their [gastroenterologist] Dr. Hernandez, and that they would be making a new care plan for me." (*Id.*)

Although Plaintiff's claims are not entirely clear, the crux of his argument appears to be that Defendant Tambe was interfering with the quality of the medical care he received by canceling his appointments with his longtime provider Dr. Irani, and delaying Plaintiff's receipt of necessary medical care by scheduling him with a different provider. Defendant asserts that NaphCare, Inc. did not assume responsibility for inmate medical treatment at the jail until February 1, 2018, and therefore this transition took place later than Plaintiff is alleging. (Tambe Decl. at ¶ 13.) Moreover, Defendant did not begin his employment at SCCJC until February 26, 2018. (*Id.* at ¶ 7.)

Plaintiff claims that when he was finally scheduled for another appointment with Dr. Irani on January 10, 2018, what should have been a one-day procedure became a lengthier stay in the hospital due to complications caused by "my prior appt. in Dec. 2017 being cancelled by H.S.A. Henry Tambe, according to Dr. Irani's receptionist." (Am. Compl. at 6.) The plastic stent was replaced with a metal stent, and Plaintiff was admitted to the hospital for two nights after complaining of abdominal pain. (Tambe Decl. at ¶ 11; *Id.*, Exs. 3-4 (January 10, 2018 chart notes and discharge summary/cytologist results showing no evidence of malignancy.)) Plaintiff was then told he needed to return in 4-6 weeks to have a repeat CT scan. (Am. Compl. at 6; Tambe Decl. at ¶ 11; *Id.*, Ex. 7 (noting that after stent placement, follow up recommended 4-6 weeks from 1/10/18 and repeat abdominal CT scan).)

1    According to Plaintiff, he was not sent back for follow-up care until June 27, 2018. (Am.
2  Compl. at 6.) Again, although the amended complaint is not entirely clear, Plaintiff appears to be
3  alleging that Defendant is responsible for undue delay in his receipt of off-site specialist care.
4  However, the chart notes reflect that Plaintiff was once again sent back to Skagit Valley Hospital
5  on January 24, 2018 after complaining of abdominal pain. After the hospital staff ruled out a
6  suspected bowel obstruction, Plaintiff was discharged on January 28, 2018 in stable condition
7  with instructions to follow up with Dr. Irani. (Dkt. # 34, Ex. 5 (progress notes and discharge
8  summary from 1/24/19 – 1/28/19).) In addition, a follow up gastroenterology appointment at
9  Skagit Valley Hospital was ordered for Plaintiff just a few weeks after NaphCare, Inc. began
10 operations at SCCJC in February 2018. (Dkt. # 34 (Tambe Decl.) at ¶ 13; Dkt. # 34, Exs. 6-7
11 (reflecting that an appointment Dr. Irani was requested on Plaintiff's behalf by NaphCare, Inc.
12 on 2/19/19).)
13   Plaintiff claims that when his stent was removed by Dr. Irani, he told Plaintiff that his
14 "cancer antigen was high at 12.5 and that he wanted me back in 30 days for a colonoscopy."
15 (Am. Compl. at 6.) However, Plaintiff alleges he was unable to return for the procedure until
16 September 2018.[2] (*Id*.) Plaintiff claims that his medications also ran out for several days in
17 September 2018. (*Id*.) Plaintiff further claims that when he ran out of pain pills for several days
18 in December 2018, "Mr. Tambe tried to make me take a pain pill that I was not prescribed
19 (Failed Informed Consent)." (*Id*.)[3] When Plaintiff returned to Virginia Mason for his yearly CT
20 scan and labs with Dr. Irani on February 1, 2019, he was told that his appointment had been
21 canceled two days before. (*Id.* at 6-7.)

---

23 [2] As discussed below, this date is not borne out by the chart notes in the record. Rather, it appears Plaintiff's colonoscopy took place in July 2008. (Dkt. # 34, Exs. 13-14.)
[3] Defendant Tambe asserts that "I did not administer any medications to Mr. Johnsen in December 2018." (Dkt. # 34 (Tambe Decl.) at ¶ 8; Dkt. # 34, Ex. 1 (December 2018 medication administration record).)

REPORT AND RECOMMENDATION - 5

1    Defendant does not deny Plaintiff's general allegation that providers at SCCJC may have
2    attempted to shift Plaintiff's care from Dr. Irani to a different provider, Manuel Ramirez, PA at
3    Skagit Valley Hospital Gastroenterology Clinic. Chart notes reflect that Plaintiff's appointment
4    with Dr. Hernandez took place on April 25, 2018. (Tambe Decl. at ¶ 14.) At that appointment,
5    Plaintiff denied new concerns and his symptoms were stable. At Plaintiff's request, Dr. Ramirez
6    referred Plaintiff back to Dr. Irani at Virginia Mason for continuity of care. (*Id.*, Ex. 8 (April 25,
7    2018 chart note from PA Ramirez).) However, Defendant Tambe did not personally "make
8    medical determinations related to Plaintiff Richard Lee Johnsen's condition or treatment plan
9    while he was detained at SCCJC. Specifically, I did not make any decisions related to the type of
10   medication prescribed for Mr. Johnsen nor did I make any decisions related to referrals for off-
11   site treatment with medical providers for Mr. Johnsen." (*Id.* at ¶ 6.) There is also no evidence in
12   the record that Defendant, or providers at SCCJC, gave Plaintiff any push-back when he was
13   referred back to Dr. Irani in April 2018. Rather, upon his return to the jail, an off-site consult for
14   Plaintiff with Dr. Irani was promptly ordered. (Tambe Decl. at ¶ 15; *Id.*, Ex. 9.)

15   After Plaintiff was re-referred to Dr. Irani, Plaintiff's medical records reflect frequent
16   follow-up appointments. When Plaintiff met with Dr. Irani on June 27, 2018, Plaintiff was
17   "overall improved" with weight gain of 15 pounds in the prior six months. Dr. Irani ordered lab
18   work and a CT scan, and noted that Plaintiff needed a colonoscopy to be arranged in the next few
19   weeks. (Dkt. # 34, Ex. 10.) On July 15, 2018, Dr. Irani sent Plaintiff findings from his test results
20   indicating, "Good news. No mass," and concluding that Plaintiff's "chronic calcific pancreatitis
21   with obstruction of the main pancreatic duct due to calculus in the head of the pancreas" was
22   "unchanged" and "without mass or acute inflammatory change." (Dkt. # 34, Ex. 11 (July 15,
23   2018 correspondence from Dr. Irani to Plaintiff).) On July 16, 2018, Dr. Irani also sent Plaintiff

lab results indicating that his tumor marker is "slightly elevated" and should be rechecked in three months. (*Id*., Ex. 12.) On July 23, 2018, Plaintiff was returned to Dr. Irani for further follow-up. (*Id*., Exs. 13-14.) Plaintiff's tumor markers were rechecked, consistent with Dr. Irani's recommendation, on October 15, 2018. (Dkt. # 34, Exs. 15-16.) On February 1, 2019, Dr. Irani indicated that Plaintiff was "doing relatively well" other than having some symptoms "consistent with a mild flare of his chronic pancreatitis." (*Id*., Exs. 17-18.) Subsequent to the appointment, Plaintiff had labs drawn and a repeat abdominal CT. (*Id*., Ex. 18.) Plaintiff participated in a small bowel capsule study on March 8, 2019, and was approved for off-site treatment. (*Id*., Exs. 19-20.)

When Plaintiff once again complained of abdominal pain on July 12, 2019, he was transferred to Skagit Valley Hospital. (*Id*., Ex. 21.) He received treatment and returned to the jail the same day. (*Id*., Ex. 22.) When Plaintiff complained of abdominal pain and vomiting again the next day, he was transferred back to the hospital. (*Id*., Ex. 23.) On July 16, 2019, Plaintiff was released from custody at SCCJC. (Tambe Decl. at ¶ 23.)

Lastly, Plaintiff claims that he fully exhausted his claims by filing grievances, but on many occasions his grievances were directly denied by Defendant Tambe or were deleted from the grievance system entirely. (Am. Compl. at 7) Plaintiff claims that Defendant's conduct in directing his medical care between December 2017 and January 2019 constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (*Id*. at 8.) He seeks injunctive relief, $5,000,000 in compensatory damages, $5,000,000 in punitive damages, and any other relief the Court deems appropriate. (*Id*.)

### III. DISCUSSION

A. <u>Summary Judgment and § 1983 Standards</u>

Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

When applying these standards, the Court must view the evidence and draw reasonable inferences in the light most favorable to the non-moving party. *See United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing evidence that negates an essential element of the nonmoving party's claim, or by establishing that the nonmoving party does not have enough evidence of an essential element to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the veracity of everything offered by the moving party or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To avoid summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving

party's failure of proof concerning an essential element of its case necessarily "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 606 F.2d 1089, 1092 (9th Cir. 1980). Specifically, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state or federal law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the constitutional or statutory violations alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

    B.    <u>Legal Standard for Deliberate Indifference to Serious Medical Needs for Pretrial Detainees Following *Gordon v. County of Orange*</u>

The Eighth Amendment's prohibition against cruel and unusual punishment/deliberate indifference to serious medical needs does not directly apply to pretrial detainees, but only applies after conviction and sentence. *See Graham v. Connor,* 490 U.S. 386, 392 n.6 (1989). However, the Supreme Court has held that "[p]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). Thus, while the Eighth Amendment proscribes cruel and unusual punishment for convicted inmates, the Due Process Clause of the Fourteenth Amendment proscribes any punishment of pretrial detainees. *See Redman v. County of San Diego,* 942 F.2d 1435, 1441 n.7 (9th Cir. 1991).

Deliberate indifference to a prisoner's medical needs is defined by the Ninth Circuit Court of Appeals as the "unnecessary and wanton infliction of pain" by ignoring a prisoner's serious medical need. *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). Indifference may be manifested by a response to the prisoner's need, by the intentional denying or delaying access to medical care, or the intentional interference with treatment once prescribed. *Id.* Where a prisoner is alleging that delay of medical treatment resulted from deliberate indifference, the prisoner must also show that the delay caused further injury. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1991). Until recently, the Ninth Circuit held that the same deliberate indifference standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees as to convicted prisoners, *i.e.,* the court would construe plaintiff's deliberate indifference claims as Fourteenth Amendment due process claims, subject to Eighth Amendment standards. *See Lolli v. Cty. of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003).

In *Gordon v. County of Orange*, the Ninth Circuit modified the standard for claims of deliberate indifference to serious medical needs brought by pretrial detainees. 888 F.3d 1118 (9th Cir. 2018). "[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Id.* at 1124-25 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).) Thus, "the plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Castro*, 833 F.3d at 1071). In other words, defendants can be held liable for deliberate indifference if their actions were objectively deliberately indifference—their subjective intent is no longer material. *See Gordon*, 888 F.3d 1124-25; *compare Farmer v. Brennan*, 511 U.S. 825,

837 (1994) (requiring pretrial detainee alleging deliberate indifference to medical needs to provide that government officials were subjectively aware of a substantial risk of serious harm and yet took no action).

The Ninth Circuit summarized the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment as follows:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.' " *Id.* at 1071 (quoting *Kingsley* [*v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015)]; *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ).

*Gordon*, 888 F.3d at 1125.

Finally, it stands that a plaintiff must show more than a difference of medical opinion as to the need to pursue one court of treatment over another. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Prison authorities retain "wide discretion" in the medical treatment afforded prisoners. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (finding mere differences of opinion between a prisoner and prison medical staff or between medical professions regarding the proper course of treatment does not give rise to a claim under section 1983).

C. <u>Plaintiff Has Not Shown that Defendant Acted with Deliberate Indifference to His Serious Medical Needs</u>

As a threshold matter, Plaintiff's attempt to establish Defendant Tambe's personal participation in the alleged constitutional violations by claiming that he is "legally responsible for the overall operations of the medical services and inmate medical care at SCCJC" fails. (Am.

Compl. at 2.) Supervisory personnel may not be held liable for actions of subordinates under a theory of vicarious liability. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff has not provided any evidence that Defendant personally participated in any harm of constitutional dimension, or that he knew of a violation and failed to prevent it. *See Arnold v. IBM*, 637 F.2d 1350 (9th Cir. 1981). As discussed below, even construing the facts in the light most favorable to Plaintiff, he has not shown that any conduct by Defendant Tambe was objectively unreasonable or constituted deliberate indifference to a serious risk that caused Plaintiff harm.

Defendant does not dispute that Plaintiff has a serious medical need, given his significant history of chronic calcific pancreatitis. (Am. Compl. at ¶ 4; Tambe Decl. at ¶ 9.) However, the crux of Plaintiff's claim appears to be that Defendant Tambe personally cancelled or otherwise interfered with scheduling off-site medical appointments with providers such as Dr. Irani for treatment of Plaintiff's pancreatitis. For example, Plaintiff claims that Defendant was deliberately indifferent to his medical needs by causing Plaintiff to be hospitalized in January 2018 due to the cancellation of a December 2017 medical appointment with Dr. Irani. (Am. Compl. at 6.) Similarly, Plaintiff claims that when he was discharged from the hospital in January 2018, his provider instructed follow-up but that follow-up was substantially delayed by Defendant. (*Id.*) Plaintiff further alleges that he was sent to the wrong provider, Dr. Hernandez, further delaying his treatment by Dr. Irani, and that Defendant failed to provide him with a proper diet and withheld (or provided incorrect) pain medication. (*Id.* at 4-7.)

Plaintiff has failed to submit sufficient evidence to establish a genuine issue of material fact to preclude summary judgment. As a threshold matter, Defendant did not begin his employment at SCCJC until February 26, 2018, and therefore did not personally participate in any alleged constitutional violation surrounding off-site treatment or follow up prior to his start

date. (Tambe Decl. at ¶ 7.) In addition, Plaintiff has not shown that Defendant personally participated in delaying, or interfering with, any of the off-site medical care Plaintiff received during his incarceration at SCCJC. It is undisputed that Defendant was not involved in the diagnosis, development of treatment plans, or off-site referrals for Plaintiff's complicated medical condition. (*Id*. at ¶ 6; *see also id*., Exs. 79, 13, 17, 19.) In fact, it is outside the scope of Defendant's license as a registered nurse to do so. (Tambe Decl. at ¶ 5.)

As demonstrated by the lengthy summary of Plaintiff's medical treatment above, Plaintiff received extensive off-site medical treatment and frequent follow-up for his condition throughout his incarceration at SCCJC. In addition to the off-site appointments documented in the record, Plaintiff had numerous onsite providers and nurse evaluations, including approximately 46 sick calls and 12 chronic care and dental appointments. (Tambe Decl. at ¶ 24.) Despite all the medical treatment Plaintiff received, he also refused medication and medical treatment on at least 87 documented occasions at SCCJC. (*Id*. at ¶ 27.)

There is also no evidence in the record, apart from Plaintiff's unsupported allegation, that Plaintiff did not receive his prescription medications or that his grievances were not responded to in a timely manner by Defendant. For example, the grievances submitted along with the amended complaint reflect that they were responded to within three days, and that Plaintiff was scheduled to see a provider and a dentist in response to his complaints. (Am. Compl. at 10-13.) Defendant asserts that he responded to Plaintiff's grievances "in full and any diet or medical issues were resolved to the extent possible within my capacity as HSA at SCCJC." (Tambe Decl. at ¶ 28.) Defendant acknowledges that inmates' prescriptions become temporarily unavailable at times, in which case substitutions are ordered by the provider. (*Id*. at ¶ 25.) However, Defendant is not involved in any such decision-making. (*Id*. ("I am unable to order prescription medications and

defer to the provider with prescribing authority in the event any medications are unavailable. At no time did I deny Mr. Johnsen prescription medication nor did I try to make Mr. Johnsen take prescription medication which was not prescribed by a provider.").) Defendant is an administrator and as such, does not have the authority to prescribe Plaintiff medication. The medical record also refutes Plaintiff's assertion that Defendant "tried to make me take a pain pill that I was not prescribed[.] (Am. Compl. at 6.) Defendant did not administer any medication to Plaintiff in December 2018. (Tambe Decl., Ex. 1 (Plaintiff's medication records from December 2018.)

Similarly, to the extent Plaintiff alleges that Defendant was personally responsible for ordering him a special diet, and failing to ensure that it complied with his medical requirements, Defendant has provided undisputed evidence that he is not responsible for ordering diets based on medical conditions or any other reason. (Tambe Decl. at ¶ 26.) Rather, "inmate kites or grievances related to dietary concerns directed to medical staff are forwarded to the SCCJC kitchen for resolution." (*Id.*)

Finally, the Court finds that Plaintiff has failed to present expert testimony or any other evidence sufficient to raise a genuine issue of material fact as to the sufficiency of the medical care Plaintiff received during his incarceration at SCCJC. Plaintiff must show delay or interference with medical treatment caused further injury, but has not provided any evidence that Defendant interfered with his treatment in any way that was medically unacceptable or constituted conscious disregard of an excessive risk to Plaintiff's health. For example, Plaintiff's allegation that after his January 10, 2018 off-site appointment he did not return to see his provider until June 27, 2018, is not borne out by the record. Plaintiff was sent for a follow up on April 27, 2018, and during this appointment no medical complications or injuries were

documented. (Tambe Decl. at ¶ 8.) The chart notes from his provider on June 27, 2018 also show no indication that a delay in treatment caused injury, but instead describe Plaintiff as "overall improved" and his pancreatitis "unchanged" and "without mass or acute inflammatory change." (Dkt. # 34, Exs. 10-12.)  Similarly, the fact that Plaintiff may have been unhappy with an alternative medication or course of treatment, without more, does not constitute deliberate indifference. Thus, without more, Plaintiff's conclusory allegations in his amended complaint are insufficient to withstand summary judgment.

## IV.   CONCLUSION

Accordingly, the Court recommends that Defendant's unopposed motion for summary judgment (Dkt. # 33) be GRANTED, and that Plaintiff's claims be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **October 17, 2019.** Objections, and any response, shall not exceed twelve pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date after the objections were due.

//

//

//

1  The Clerk is directed to send copies of this Report and Recommendation to the parties
2  and to the Honorable Thomas S. Zilly.
3  Dated this 26th day of September, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge